DEBORAH S. REAMES, State Bar No. 117257
GEORGE M. TORGUN, State Bar No. 222085
Earthjustice
426 17th Street, 5th Floor
Oakland, CA 94612
(510) 550-6725

Attorneys for Plaintiffs Latino Issues Forum,
Medical Advocates for Healthy Air, and Sierra Club

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF CALIFORNIA
FRESNO DIVISION

| | |
|---|---|
| LATINO ISSUES FORUM, MEDICAL ADVOCATES FOR HEALTHY AIR, and SIERRA CLUB, non-profit organizations, <br><br> Plaintiffs, <br><br> v. <br><br> SAN JOAQUIN VALLEY UNIFIED AIR POLLUTION CONTROL DISTRICT, <br><br> Defendant. | Case No.: <br><br> COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF |

**INTRODUCTION**

1.      Plaintiffs Latino Issues Forum, Medical Advocates for Healthy Air, and Sierra Club ("plaintiffs") bring this Clean Air Act citizen suit to compel the San Joaquin Valley Unified Air Pollution Control District ("Air District") to adopt and implement pollution control measures required by its own 2003 San Joaquin Valley Plan to Attain Federal Standards for Particulate Matter 10 Microns and Smaller ("2003 PM-10 Plan" or "Plan").  The 2003 PM-10 Plan committed the Air District to adopt, among other measures, five enforceable rules to reduce emissions of PM-10 and PM-10 precursors from small boilers, steam generators, and process heaters; commercial dryers; residential space heaters; industrial, commercial, and institutional water heaters; and through an indirect source mitigation program.  The U.S. Environmental Protection Agency ("EPA") approved the 2003 PM-10 Plan on May 26, 2004, and the Air District was required to adopt the five measures

1  described above by the end of 2004.  Once implemented, these rules are projected to reduce PM-10
2  emissions by 6.2 tons per day and emissions of nitrogen oxides ("NOx"), a PM-10 precursor, by 6.4
3  tons per day.  However, the Air District has yet to adopt any of these five pollution control measures.
4    2.    The Clean Air Act ("Act") was enacted by Congress in 1970 in order to protect and
5  enhance the quality of the Nation's air resources, with the ultimate goal of providing healthy air for
6  all Americans.  More than three decades later, however, the San Joaquin Valley has yet to attain the
7  health-based standards for particulate matter.  The American Lung Association consistently ranks
8  Visalia-Porterville, Bakersfield, and Fresno-Madera as three of the four most dangerous places to
9  breathe in the United States.  Indeed, the San Joaquin Valley has so regularly exceeded the federal
10  PM-10 health standard that it currently retains EPA's worst possible PM-10 classification.
11  Moreover, the California Air Resources Board ("CARB") reports that, without direct controls, PM-
12  10 emissions in the Valley are projected to continue rising through at least 2020.  By failing to
13  comply with the obligations its own 2003 PM-10 Plan and the Clean Air Act, the Air District
14  continues to allow the deterioration of air quality for San Joaquin Valley residents.

## JURISDICTION

16    3.    This Court has jurisdiction over this action by virtue of 28 U.S.C. § 1331 (action
17  arising under the laws of the United States) and 42 U.S.C. § 7604(a) (citizen suit provision of the
18  Clean Air Act).
19    4.    Plaintiffs have provided the Air District, the EPA Administrator, the Regional
20  Administrator of EPA Region IX, CARB, and Governor Arnold Schwarzenegger with written notice
21  of the alleged violations in this action at least 60 says before commencing this action as required by
22  42 U.S.C. § 7604(b)(1) and 40 C.F.R. Part 54.  *See* Exhibit 1, attached hereto (Letter from Deborah
23  S. Reames and George M. Torgun, counsel for plaintiffs, to David L. Crow, Executive Director of
24  the Air District, dated January 20, 2005).  The Air District has failed to correct its violations of the
25  Act since notice was given.

## VENUE AND INTRADISTRICT ASSIGNMENT

27    5.    Venue lies in this judicial district by virtue of 28 U.S.C. § 1391(b)(1) because the Air
28  District is headquartered in Fresno, California.  Venue is also proper in this judicial district by virtue

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF                         2

1  of 28 U.S.C. § 1391(b)(2) because the omissions giving rise to the claims occurred here.

2      6.    Assignment to the Fresno Division of this Court is proper by virtue of Local Rule 3-
3  120(d) because this action arises in Fresno County.

**PARTIES**

7.    The plaintiffs in this action are:

    a.    Plaintiff LATINO ISSUES FORUM is a San Francisco based non-profit corporation dedicated to advancing new and innovative public policy solutions to social, political, and environmental issues affecting California's Latino community. Its mission includes advancing regulatory solutions to air pollution problems that affect the health and economic welfare of the Latino community, and it engages in educational, research, and advocacy activities in furtherance of that mission. Latino Issues Forum maintains an office in Fresno that focuses specifically on air quality issues. It has published the reports "New Voices for Change: Environmental Health Issues in Latino Communities of the San Joaquin Valley" and "Taking Action: Confronting the Health, Social and Environmental Factors Associated with Asthma in the Latino Community," both of which address air quality issues statewide.

    b.    Plaintiff MEDICAL ADVOCATES FOR HEALTHY AIR is a California non-profit association based in Fresno. The association consists of medical professionals living in the San Joaquin Valley who regularly treat patients suffering from respiratory ailments that are caused or greatly exacerbated by the Valley's unhealthy levels of air pollution. The association's mission includes advocating for the expeditious attainment of state and national health-based air quality standards in the Valley through public education, litigation, and other means. Members of Medical Advocates for Healthy Air also work with the Fresno Unified School District to identify and implement specific measures to reduce the effects of air pollution on the approximately 70,000 children within the School District, especially the 7,000 children suffering from asthma.

    c.    Plaintiff SIERRA CLUB is a national conservation organization incorporated under the laws of California and headquartered in San Francisco. The Sierra Club has over 700,000 members nationwide, including more than 3,000 members in its Fresno, Bakersfield, and Sacramento chapters. The Sierra Club's mission includes the protection and restoration of the

1  natural and human environment, and its activities include public education, advocacy, and litigation
2  to enforce environmental laws.  For over three decades, the Sierra Club has worked to enact,
3  strengthen, and enforce the Clean Air Act and its regulations to reduce air pollution in the United
4  States, California, and the San Joaquin Valley.

5        8.      Members of plaintiff organizations live, raise their families, work (including treating
6  patients suffering adverse health effects from air pollution), recreate, and conduct educational,
7  research, advocacy, and other activities in the San Joaquin Valley.  They are adversely affected by
8  exposure to levels of air pollution that exceed the national health-based particulate matter standards
9  established under the Clean Air Act.  The adverse effects of such pollution include actual or
10 threatened harm to their health, their families' health, their patients' health, their professional,
11 educational, and economic interests, and their aesthetic and recreational enjoyment of the
12 environment in the Valley and the Sierra Nevada Mountains.

13       9.      The Air District's violations of the Clean Air Act, as alleged below, have injured and
14 continue to injure the interests of the plaintiff organizations and their members.  The relief requested
15 in this lawsuit would redress these injuries by compelling action by the Air District that Congress
16 determined to be an integral part of the regulatory scheme for improving air quality in areas violating
17 national air quality standards, such as the San Joaquin Valley.

18       10.      Defendant SAN JOAQUIN VALLEY UNIFIED AIR POLLUTION CONTROL
19 DISTRICT is the local agency responsible for adopting and enforcing the Clean Air Act's emission
20 standards or limitations for stationary sources of air pollution in the San Joaquin Valley, including
21 Fresno, Kings, Madera, Merced, San Joaquin, and Stanislaus counties, and portions of Kern and
22 Tulare counties.  It also has primary responsibility for achieving and maintaining the air quality
23 standards set under the Act in the San Joaquin Valley.

**STATUTORY AND REGULATORY BACKGROUND**

25       11.      The Clean Air Act creates a framework for the "development of cooperative Federal,
26 State, regional, and local programs to prevent and control air pollution."  42 U.S.C. § 7401(a)(4).
27 EPA is required to set national ambient air quality standards ("national standards") for pollutants at
28 levels sufficient to protect public health with an adequate margin of safety.  *Id.* at § 7409(a), (b).

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF    4

Each State, or region of a State, must then adopt and submit to EPA, after reasonable notice and public hearings, an implementation plan ("SIP") with control measures designed to ensure attainment of the national standards. *Id.* at § 7410(a). If approved by EPA, the provisions of a SIP become enforceable commitments. *Id.* at §§ 7410(a)(2)(A); 7604.

12. EPA has established both a 24-hour and an annual national ambient air quality standard for PM-10. 40 C.F.R. § 50.6(a), (b). PM-10 is defined by the Act as "particulate matter with an aerodynamic diameter less than or equal to a nominal ten micrometers." 42 U.S.C. § 7602(t).

13. When a State, or a region of a State, fails to meet the national standards for a pollutant, it is designated as a "nonattainment area" and is subject to additional SIP requirements. Regions classified as "moderate" PM-10 nonattainment areas were required to submit to EPA by November 15, 1991 a SIP containing all reasonably available control measures ("RACM") to ensure compliance with the PM-10 standards, and were further required to implement those measures by December 10, 1993. *Id.* at § 7513a(a). Regions classified as "serious" PM-10 nonattainment areas were required to submit to EPA, no later than 18 months after reclassification, a SIP containing all best available control measures ("BACM") to ensure compliance with the PM-10 standards, and were further required to implement those measures no later than four years after reclassification. *Id.* at § 7513a(b). The Clean Air Act mandated that serious areas attain the PM-10 standards no later than December 31, 2001. *Id.* at § 7513(c)(2).

## FACTUAL BACKGROUND

**The Problem of PM-10 Pollution**

14. PM-10 is comprised of fine particles such as dust, soot, and fumes that can be suspended in the air for extended periods of time. The primary sources of PM-10 pollution in the San Joaquin Valley are unpaved roads, farming operations, paved road dust, windblown dust, waste burning and disposal, construction and demolition, industrial processes, fuel combustion, and mobile sources.

15. PM-10 pollution presents a serious public health hazard because the small particles can be inhaled deep into the lungs, causing respiratory distress, and then enter the bloodstream,

resulting in heart attacks and even death.  Non-fatal effects of PM-10 include reduced lung function, heart problems, and aggravation of respiratory illnesses such as asthma, bronchitis, and emphysema.  In the San Joaquin Valley, it is estimated that PM-10 causes more than 72,000 asthma attacks and 562,000 lost work days per year.  Recent studies have also demonstrated that PM-10 poses a significant threat to reproductive health, leading to a high risk of preterm births, heart malformations, low birth rate, and intrauterine growth retardation.  It is now recognized that short-term PM-10 exposure not only exacerbates heart diseases, but can actually trigger heart attacks in otherwise healthy adults.  An estimated 60,000 premature deaths nationwide, including 1,300 in the San Joaquin Valley, occur every year from unsafe levels of PM-10.  The most vulnerable residents include children, the elderly, and persons already suffering from respiratory ailments.

**The Air District's Failure to Remedy PM-10 Pollution**

16. The San Joaquin Valley has never attained the national standards for PM-10, and has been designated by EPA as a "serious" PM-10 nonattainment area since January 8, 1993.  58 Fed. Reg. 3334 (Jan. 8, 1993).  The Valley's eight counties are already among the 19 most severely PM-10 polluted counties in the country, and PM-10 concentrations recorded from 1999 to 2002 in Fresno and Bakersfield have been as high as 30-35% above the national health-based standard.

17. As a "serious" PM-10 nonattainment area, the Air District was required by the Clean Air Act to submit its SIP to EPA by August 8, 1994.  42 U.S.C. § 7513a(b)(2).

18. The Air District submitted its 2003 PM-10 Plan to EPA on August 19, 2003, and submitted amendments to the Plan on December 30, 2003.  *See* 69 Fed. Reg. 5412 (Feb. 4, 2004).

19. On May 26, 2004, EPA approved the 2003 PM-10 Plan.  69 Fed. Reg. 30006 (May 26, 2004).

20. The 2003 PM-10 Plan provided that the Air District would achieve the national standards for PM-10 by adopting and implementing several pollution control measures to reduce emissions of PM-10 and NOx.  These measures were to be implemented through enforceable Air District rules in accordance with the schedule described in the Plan.

21. In the 2003 PM-10 Plan:

  a. The Air District committed to adopt by December 31, 2004, and implement by December 31, 2006, a small boiler, steam generator, and process heater rule (Air District Rule 4307) to reduce NOx emissions by 1.0 tons per day;

  b. The Air District committed to adopt by June 30, 2004, and implement by December 31, 2006, a commercial dryer rule (Air District Rule 4309) to reduce NOx emissions by 1.0 tons per day;

  c. The Air District committed to adopt by September 30, 2004, and implement by December 31, 2020, a residential space heater rule (Air District Rule 4903) to reduce NOx emissions by 0.1 tons per day;

  d. The Air District committed to adopt by December 31, 2004, and implement by December 31, 2004, an industrial, commercial, and institutional water heater rule to reduce NOx emissions by 0.2 tons per day; and

  e. The Air District committed to adopt by December 31, 2004, and implement by December 31, 2005, an indirect source mitigation program rule (Air District Rule 9510) to reduce PM-10 emissions by 6.2 tons per day and NOx emissions by 4.1 tons per day.

22. The Air District has failed to adopt or implement the five rules identified in paragraph 21 above.

## FIRST CAUSE OF ACTION

**FAILURE BY THE AIR DISTRICT TO ADOPT AND IMPLEMENT SIP MEASURES**

23. Plaintiffs reallege each and every allegation set forth above, as if fully set forth herein.

24. The Air District is a "person" as defined in Section 302(e) of the Act, 42 U.S.C. § 7602(e).

25. The standards, limitations, and schedules contained in the 2003 PM-10 Plan and described in paragraph 21 above were approved by EPA and are emissions standards or limitations as defined in Section 304(f) of the Act, 42 U.S.C. § 7604(f).

26. The Air District has violated emissions standards or limitations by failing to adopt or implement the five PM-10 reduction measures described in paragraph 21 above according to the

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF 7

schedule established in the 2003 PM-10 Plan.

27.     The Air District's violations are ongoing and will continue unless remedied by an order of this Court.

**PRAYER FOR RELIEF**

WHEREFORE, plaintiffs respectfully request that this Court grant the following relief:

A. An order declaring that the Air District is in violation of the Clean Air Act and the 2003 PM-10 Plan by failing to adopt or implement measures to reduce PM-10 and NOx emissions from small boilers, steam generators, and process heaters; commercial dryers; residential space heaters; industrial, commercial, and institutional water heaters; and through its indirect source mitigation program;

B. A preliminary and permanent injunction directing the Air District to adopt and implement forthwith:

1. An Air District Rule reducing NOx emissions from small boilers, steam generators, and process heaters by at least the level of emissions reductions specified in the 2003 PM-10 Plan for that rule;

2. An Air District Rule reducing NOx emissions from commercial dryers by at least the level of emissions reductions specified in the 2003 PM-10 Plan for that rule;

3. An Air District Rule reducing NOx emissions from residential space heaters by at least the level of emissions reductions specified in the 2003 PM-10 Plan for that rule;

4. An Air District Rule reducing NOx emissions from industrial, commercial, and institutional water heaters by at least the level of emissions reductions specified in the 2003 PM-10 Plan for that rule; and

5. An Air District Rule reducing PM-10 and NOx emissions through an indirect source mitigation program by at least the level of emissions reductions specified in the 2003 PM-10 Plan for that rule;

C. Retention of jurisdiction over this matter until such time as the Air District has

1    complied with its duty to fully implement all of the PM-10 reduction measures
2    contained in the 2003 PM-10 Plan;
3    D.    An award to plaintiffs of their costs of litigation, including reasonable attorney and
4    expert witness fees; and
5    E.    Such additional relief as the Court may deem just and proper.

7    DATED:  May  5 , 2005                    Respectfully submitted,

   /s/ George M. Torgun
DEBORAH S. REAMES
GEORGE M. TORGUN
Earthjustice
426 17th Street, 5th Floor
Oakland, CA 94612

Attorneys for Plaintiffs Latino Issues Forum, Medical Advocates for Healthy Air, and Sierra Club

# Exhibit 1

**EARTHJUSTICE**

BOZEMAN, MONTANA    DENVER, COLORADO    HONOLULU, HAWAII
JUNEAU, ALASKA    NEW ORLEANS, LOUISIANA    OAKLAND, CALIFORNIA
SEATTLE, WASHINGTON    TALLAHASSEE, FLORIDA    WASHINGTON, D.C.
ENVIRONMENTAL LAW CLINIC AT UNIVERSITY OF DENVER
ENVIRONMENTAL LAW CLINIC AT STANFORD UNIVERSITY

January 20, 2005

**RECEIVED
JAN 2 4 2005
San Joaquin Valley Unified
Air Pollution Control District**

<u>**VIA FACSIMILE AND CERTIFIED MAIL**</u>

David L. Crow, Executive Director
San Joaquin Valley Unified Air Pollution Control District
1990 East Gettysburg Avenue
Fresno, CA 93726-0244

**Re: Notice of Intent to File Clean Air Act Citizen Suit**

Dear Mr. Crow:

The following groups hereby notify you, pursuant to Section 304(b) of the Clean Air Act, 42 U.S.C. § 7604(b), that they intend to sue the San Joaquin Valley Unified Air Pollution Control District ("Air District") for its failure to adopt seven mandatory pollution control measures contained in the Air District's 2003 Plan to Attain Federal Standards for Particulate Matter 10 Microns and Smaller ("PM-10 Plan" or "Plan"):

- Medical Advocates for Healthy Air (PMB 59, 5132 N. Palm Ave., Fresno, CA 93704-2203);

- Sierra Club, including its Tehipite Chapter (P.O. Box 5396, Fresno, CA 93755-5396), Kern-Kaweah Chapter (P.O. Box 3357, Bakersfield, CA 93385-3357), and Motherlode Chapter (1414 K Street, Suite 300, Sacramento, CA 95814) (the Sierra Club's headquarters are located at 85 Second Street, San Francisco, CA 94105);

- Latino Issues Forum (160 Pine Street, Suite 700, San Francisco, CA 94111).

After waiting twelve years beyond the deadline set by the Clean Air Act to submit a plan to the U.S. Environmental Protection Agency ("EPA") to control PM-10, the Air District finally developed and submitted, as a result of litigation, its PM-10 Plan for federal approval on December 18, 2003. On May 26, 2004, EPA finalized its approval of the Plan (69 Fed. Reg. 30006-36). The Plan relies heavily on "commitments" by the Air District to adopt and implement by specific deadlines pollution control measures to reduce emissions of PM-10 and oxides of nitrogen ("NOx"), a PM-10 precursor. Unfortunately, the Air District has already missed the deadlines to adopt a number of the control measures in the Plan, ensuring that San Joaquin Valley residents will continue to breathe some of the unhealthiest air in the nation.

PM-10 pollution is caused by primary particles, such as dust and soot, and secondary (or chemically formed) particles, created by reactions between compounds such as NOx and

426 17TH STREET, 5TH FLOOR    OAKLAND, CA 94612
T: 510.550.6725    F: 510.550.6749    E: eajusca@earthjustice.org    W: www.earthjustice.org

NON WOOD FIBERS · POST CONSUMER PAPER · PROCESSED CHLORINE FREE

ammonia, that result from sources such as unpaved roads, farming operations, paved road dust, windblown dust, waste burning and disposal, construction and demolition, industrial processes, fuel combustion, and mobile sources. These particles pose a serious public health hazard since they can be inhaled deep into the lungs, causing respiratory distress, and then enter the bloodstream, causing heart attacks and even death. In fact, an estimated 1,200 premature deaths occur in the Valley each year from unsafe levels of PM-10, and the most vulnerable residents include children, the elderly, and persons already suffering from respiratory ailments. The Valley has so regularly exceeded the federal PM-10 health standard that it currently retains EPA's worst possible PM-10 classification, and the California Air Resources Board reports that the Valley's PM-10 emissions have increased steadily every year since 1975 and, without controls, are projected to continue rising through at least 2010.

The PM-10 Plan required the Air District to adopt and implement the following pollution control rules in accordance with the schedule indicated below:

| Rule # | Description | Required Adoption Date | Required Implementation Date | Estimated Pollution Reductions by 2010 |
|---|---|---|---|---|
| 4101 | Agricultural Internal Combustion Engines | 4th Quarter, 2004 | 3rd Quarter, 2005 | 9.3 tons/day NOx* |
| 4204 | Cotton Gins | 4th Quarter, 2004 | 2005 | 1.7 tons/day PM-10 |
| 4307 | Small Boilers, Steam Generators, and Process Heaters | 4th Quarter, 2004 | 2006 | 1.0 tons/day NOx |
| 4309 | Commercial Dryers | 2nd Quarter, 2004 | 2006 | 1.0 tons/day NOx |
| 4903 | Residential Space Heaters | 3rd Quarter, 2004 | 2020 | 0.1 tons/day NOx |
| New | Industrial, Commercial, and Institutional Water Heaters | 4th Quarter, 2004 | 4th Quarter, 2004 | 0.2 tons/day NOx |
| 9510 | Indirect Source Mitigation Program | 2004 | 2005 | 6.2 tons/day PM-10<br>4.1 tons/day NOx |

Source: 69 Fed. Reg. 5412-31 (Feb. 4, 2004); 69 Fed. Reg. 30006-36 (May 26, 2004).
*In combination with Rule #4702.

The Air District has not adopted any of these rules in clear violation of the Clean Air Act. The Act requires that the PM-10 Plan contain enforceable strategies to attain the federal PM-10 health standard. 42 U.S.C. § 7502(a)(2), (c). Once EPA approved the Air District's PM-10 Plan, including its commitments to adopt and implement specific pollution control rules, those commitments, including their associated deadlines, became federally enforceable strategies. The Air District's failure to comply with those strategies is a violation of "an emission standard or limitation" as defined by the Act, and is therefore enforceable by a citizen suit. 42 U.S.C. § 7604(a), (f).

The dates of violation for each of the missed deadlines identified in the table above are each and every day following the missed deadline, continuing to the present. For deadlines defined as "Fourth Quarter 2004", the operative deadline was December 31, 2004. For deadlines defined as "Third Quarter 2004", the operative deadline was September 30, 2004. For deadlines defined as "Second Quarter 2004", the operative deadline was June 30, 2004. The persons responsible for the violations are the Air District and its governing board and Executive Director. The location of the violations is the Air District's headquarters in Fresno.

Unless the rules discussed above are promptly adopted, we anticipate filing suit in federal court sixty days after your receipt of this letter. The suit will address the Air District's continuing violation of the PM-10 Plan, which constitutes a violation of an emissions standard or limitation within the meaning of the Clean Air Act.

Please feel free to contact either Deborah Reames or George Torgun to discuss this matter at the address and telephone number provided above. We would welcome the opportunity to clarify our understanding of these important issues and explore the possibility of resolving our claims short of litigation.

Sincerely,

Deborah S. Reames
George M. Torgun
Attorneys for Medical Advocates for Healthy Air,
Sierra Club, and Latino Issues Forum.

cc:     Michael O. Leavitt, EPA Administrator (by Certified Mail)
        Governor Arnold Schwarzenegger (by Certified Mail)
        Wayne Nastri, Regional Administrator, EPA Region IX (by Certified Mail)
        Debbie Jordan, Air Division Director, EPA Region IX (by Certified Mail)
        Catherine Witherspoon, California Air Resources Board (by Certified Mail)